**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Derek Dunn, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

**INTRODUCTION**

1.      I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, and have been so employed since April 2003. I am currently assigned to the Manchester, New Hampshire field office. As part of my regular duties as an agent, I investigate criminal violations relating to a broad range of immigration and customs related statutes, including those relating to child exploitation and child pornography. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. §2256) in various forms of media, including digital/computer media. I have conducted investigations and executed search warrants involving child exploitation and child pornography offenses.

2.      I am a "Federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.      I make this affidavit in support of an application for a search warrant for information associated with the Skype account live:newenglandpuppy2 (hereinafter referred to as the SUBJECT ACCOUNT), identified in Attachment A, stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a message provider headquartered in Redmond, Washington.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to

the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications, as further described in Attachment B.

4.     The facts in this affidavit come from my personal observations, my training, and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2251(a), (c), and (e) – Sexual exploitation of children, and attempts and conspiracies to sexually exploit children; 18 U.S.C. § 2252A(a)(1) & (b)(1) – Transportation and attempted transportation of child pornography; 18 U.S.C. § 2252A(a)(2) & (b)(1) – Distribution and attempted distribution of child pornography; 18 U.S.C. § 2252A(a)(2) & (b)(1) – Receipt and attempted receipt of child pornography; 18 U.S.C. § 2252A(a)(5)(B) & (b)(2) – Possession of and access with intent to view child pornography; and 18 U.S.C. § 2422(b) – Coercion and enticement and attempted coercion and enticement of a minor, have been committed by the user of the SUBJECT ACCOUNT. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

6.      Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## **STATUTORY AUTHORITY**

7.      As noted above, this investigation concerns alleged violations of the following:

a)      18 U.S.C. § 2251(a) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, or transporting any minor in or affecting interstate or foreign commerce with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or attempting or conspiring to do so.

b)      18 U.S.C. § 2251(c) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, if the person intends such visual depiction to be transported to the United States, its territories or possession, by any means, including by using any means or facility of interstate or foreign

3

commerce or mail; or if the person transports such visual depiction to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail; or attempting or conspiring to do so.

c)      18 U.S.C. § 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

d)      18 U.S.C. § 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

e)      18 U.S.C. § 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

f)      18 U.S.C. § 2422(b) prohibits any person from using the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempting to do so.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

8.      The investigation, described more fully below, involves individuals who have engaged in the sexual exploitation of children through an internet-based, videoconferencing and chat application known as Skype.  Based on the investigation, there is probable cause to believe that the user of the SUBJECT ACCOUNT has engaged or attempted to engage in the sexual exploitation of minors in violation of the above federal criminal statutes, and that evidence of that conduct will be found within the contents of that account.

### Background on Online Child Sex Trafficking and Exploitation via Webcam and the Internet

9.      HSI is investigating individuals who provide access to pre-produced child sexual abuse material and live-streaming online webcam shows involving the sexual abuse of children to paying customers worldwide.  This growing transnational child-sexual-abuse industry includes child sex traffickers in, among other places, the Philippines, who collect viewership fees from vetted customers scattered throughout the world.  Paying customers often request that these child sex traffickers provide pre-recorded depictions of minors engaging in sexually explicit conduct or sexually abuse minors in real time during private webcam interactions on a variety of streaming video services and applications, including Skype.

10.     Based on my training, experience, and information conveyed to me by other law enforcement agents involved in the investigation of live-streaming depictions of child sexual abuse, I know that it is common for such traffickers in the Philippines and elsewhere to be communicating with a large number of individuals who are paying for access to such material.  I also know that it is common for the paying customers to be communicating with other traffickers—and sometimes many other traffickers—who are selling access to similar material

over the internet.  These individuals often use a variety of money service businesses to pay the traffickers or associates of the traffickers for access to this material, including Western Union, WorldRemit, MoneyGram, PayPal, Xoom, and Remitly.

11.    I also know that the purchasing individuals often find ways to capture the live-streamed child sexual abuse and exploitation, either by recording the live shows onto their computers or taking still photographs (including "screen captures" or "screen shots") of the abuse, which can also be stored on the individual's computer or an electronic storage device. Such individuals often also save any pre-produced child sexual abuse material the traffickers provide to their computer or an electronic device for later viewing or distribution.

12.    HSI has identified individuals operating child-sex-trafficking networks from the Philippines.  Based on undercover activity and other investigation, HSI is aware that these traffickers did, in fact, have access to minors to sexually abuse on camera and have offered to provide access through Skype to visual depictions of one or more minors engaging in sexually explicit conduct in exchange for money.

## PROBABLE CAUSE

13.    On February 15, 2024, federal search warrant 3:24-mc-175 was issued in the United States District Court for the District of Oregon and executed on Microsoft for contents within multiple Skype accounts suspected of livestreaming the sexual abuse of children in the Philippines to paying customers worldwide, including TRAFFICKER ACCOUNT 1 and TRAFFICKER ACCOUNT 2.  A review of the records provided by Microsoft revealed that the users of TRAFFICKER ACCOUNT 1 and TRAFFICKER ACCOUNT 2 were located in the Philippines and were communicating and providing livestream sex shows involving minors in exchange for payment from numerous other Skype account users.  One of the Skype accounts

6

that was in communication with both TRAFFICKER ACCOUNT 1 and TRAFFICKER ACCOUNT 2 was the SUBJECT ACCOUNT.

**Communications between SUBJECT ACCONT and TRAFFICKER ACCOUNT 1**

14.    Between April 11, 2020 and November 18, 2020, the SUBJECT ACCOUNT and TRAFFICKER ACCOUNT 1 exchanged more than 5,000 messages, 1 media file, and 18 connected calls.  Based on my review of these communications in conjunction with my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, as further described below, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

15.    The following is an excerpt of messages exchanged between the SUBJECT ACCOUNT and TRAFFICKER ACCOUNT 1 on April 11, 2020 between 22:58 and 23:01 hours (UTC):

| | |
|---|---|
| SUBJECT ACCOUNT | hey there |
| SUBJECT ACCOUNT | hru |
| TRAFFICKER ACCOUNT 1 | horny |
| TRAFFICKER ACCOUNT 1 | wana play? |
| TRAFFICKER ACCOUNT 1 | show u good |
| TRAFFICKER ACCOUNT 1 | i hve 3 kids |
| TRAFFICKER ACCOUNT 1 | 2 son and 1 daugh |
| SUBJECT ACCOUNT | how old r they |
| TRAFFICKER ACCOUNT 1 | daugh is 10yo |
| SUBJECT ACCOUNT | and would u have them join u in the show here |
| SUBJECT ACCOUNT | and ur sons |
| TRAFFICKER ACCOUNT 1 | yes |
| TRAFFICKER ACCOUNT 1 | but how u pay me hun? |
| SUBJECT ACCOUNT | wu |

16.     The following is an excerpt of messages between the SUBJECT ACCOUNT and

TRAFFICKER ACCOUNT 1 on April 23, 2020 between 22:20 and 22:22 hours (UTC):

| | |
|---|---|
| SUBJECT ACCOUNT | but i need ur info so i can send |
| TRAFFICKER ACCOUNT 1 | ok hun |
| TRAFFICKER ACCOUNT 1 | wer u sent? |
| SUBJECT ACCOUNT | wu |
| TRAFFICKER ACCOUNT 1 | my name is |
| TRAFFICKER ACCOUNT 1 | gilbert  a. bordado |
| TRAFFICKER ACCOUNT 1 | dasmarinas cavite city |
| TRAFFICKER ACCOUNT 1 | 9164653099 |

17.     The following are 3 excerpts of messages sent between the SUBJECT

ACCOUNT and TRAFFICKER ACCOUNT 1 during an hour and 15 minute continuous live

videochat from April 24, 2020 at 23:49 hours (UTC) to April 25, 2020 at 1:04 hours (UTC):

| | |
|---|---|
| TRAFFICKER ACCOUNT 1 | Call started. |
| TRAFFICKER ACCOUNT 1 | see her love? |
| SUBJECT ACCOUNT | please now cam up so i can see her face love |
| TRAFFICKER ACCOUNT 1 | yes love |
| TRAFFICKER ACCOUNT 1 | heheh she is good grl |
| TRAFFICKER ACCOUNT 1 | she said ntm u |
| SUBJECT ACCOUNT | she very pitty love |
| TRAFFICKER ACCOUNT 1 | yess |
| SUBJECT ACCOUNT | like her mom |
| TRAFFICKER ACCOUNT 1 | heheh ty |
| TRAFFICKER ACCOUNT 1 | she cant wait to hve toys hehe |
| SUBJECT ACCOUNT | love u ok with them in both her pussy and ass love |
| TRAFFICKER ACCOUNT 1 | yesss |
| TRAFFICKER ACCOUNT 1 | ofc i will do wat u like |
| TRAFFICKER ACCOUNT 1 | cuz ur very kind to me |
| TRAFFICKER ACCOUNT 1 | and she happy u help again tomorow she like to buy nre panties |
| SUBJECT ACCOUNT | ok |
| TRAFFICKER ACCOUNT 1 | she pee love |
| TRAFFICKER ACCOUNT 1 | she said to me she like to know all about play |
| TRAFFICKER ACCOUNT 1 | hehehehe |
| TRAFFICKER ACCOUNT 1 | she want to learn good |
| SUBJECT ACCOUNT | so with the 35 i send to love u think u start teaching her love and start with sucking love |
| TRAFFICKER ACCOUNT 1 | yes love |
| TRAFFICKER ACCOUNT 1 | so she can learn good and well |

| SUBJECT ACCOUNT | yes bb |
| --- | --- |
| TRAFFICKER ACCOUNT 1 | cuz she really want to learn fast for u |
| SUBJECT ACCOUNT | so bb what r there names love |
| TRAFFICKER ACCOUNT 1 | jane |
| SUBJECT ACCOUNT | and ur son love |
| TRAFFICKER ACCOUNT 1 | gab |

| SUBJECT ACCOUNT | tell u what love u and ur kids keep me happy and cumming love and the money will not stop ok |
| --- | --- |
| TRAFFICKER ACCOUNT 1 | yes love... i will do my best to make u happy and stay with me |
| TRAFFICKER ACCOUNT 1 | me and my kids fo wat u want... to be sure ur happy |

| SUBJECT ACCOUNT | where we left off yesterday is good love if ok with u and gab love |
| --- | --- |
| TRAFFICKER ACCOUNT 1 | bck love |
| TRAFFICKER ACCOUNT 1 | i pee |
| TRAFFICKER ACCOUNT 1 | yes |
| SUBJECT ACCOUNT | <ss type='kiss'>(kiss)</ss> |
| TRAFFICKER ACCOUNT 1 | i suck again? |
| SUBJECT ACCOUNT | or u have jane try it |
| TRAFFICKER ACCOUNT 1 | is ok jane do tom.. cuz she know jane start tom. |
| TRAFFICKER ACCOUNT 1 | like u said hehe |
| SUBJECT ACCOUNT | yes |
| SUBJECT ACCOUNT | so gab like when u suck him love |
| TRAFFICKER ACCOUNT 1 | jane want to learn how to suck and play |
| TRAFFICKER ACCOUNT 1 | yess |
| SUBJECT ACCOUNT | bb u know u r a naughty slut love |
| TRAFFICKER ACCOUNT 1 | yes |
| TRAFFICKER ACCOUNT 1 | son get hard |
| TRAFFICKER ACCOUNT 1 | lol |
| SUBJECT ACCOUNT | yes i see |
| TRAFFICKER ACCOUNT 1 | hehehehe |
| TRAFFICKER ACCOUNT 1 | he is asking |
| SUBJECT ACCOUNT | asking what bb |
| TRAFFICKER ACCOUNT 1 | if i buy him toy now lol |
| TRAFFICKER ACCOUNT 1 | i said yes |
| SUBJECT ACCOUNT | tom love well a cheap one |
| SUBJECT ACCOUNT | after u get the 35 love that i send love |
| TRAFFICKER ACCOUNT 1 | yes heheh he is happy to say yes i buy |

**Communications between SUBJECT ACCOUNT and TRAFFICKER ACCOUNT 2**

18.    Between December 13, 2018 and January 17, 2019, the SUBJECT ACCOUNT

and TRAFFICKER ACCOUNT 2 exchanged more than 60 messages in which the user of the

SUBJECT ACCOUNT inquires about sending money to the user of TRAFFICKER ACCOUNT

2 in exchange for the live viewing of the sexual abuse of two children.

19.    The following is an excerpt of messages sent between the SUBJECT ACCOUNT

and TRAFFICKER ACCOUNT 2 on December 13, 2018 between 22:00 and 23:35 hours (UTC):

| | |
|---|---|
| SUBJECT ACCOUNT | if i was to send u money in wu would u have ur kid join u in prvt here |
| TRAFFICKER ACCOUNT 2 | ok |
| TRAFFICKER ACCOUNT 2 | how mach |
| TRAFFICKER ACCOUNT 2 | for show her |
| SUBJECT ACCOUNT | how old is ur kid |
| TRAFFICKER ACCOUNT 2 | 12 old |
| SUBJECT ACCOUNT | and what would u like |
| TRAFFICKER ACCOUNT 2 | 9 old |
| SUBJECT ACCOUNT | boy or girl love |
| TRAFFICKER ACCOUNT 2 | try to tip on sac |
| TRAFFICKER ACCOUNT 2 | trust |
| TRAFFICKER ACCOUNT 2 | girl |
| SUBJECT ACCOUNT | and u ok with licking her and use toy if u have or finger in her asshole |
| TRAFFICKER ACCOUNT 2 | for show here |
| TRAFFICKER ACCOUNT 2 | hru |
| SUBJECT ACCOUNT | yes here |
| TRAFFICKER ACCOUNT 2 | ok |
| TRAFFICKER ACCOUNT 2 | come in my room sac huny ok |
| TRAFFICKER ACCOUNT 2 | prvt me on sac |

20.    As shown in the above excerpts of communications with TRAFFICKER

ACCOUNT 1 and TRAFFICKER ACCOUNT 2, the user of the SUBJECT ACCOUNT is an

individual who has requested livestream sex shows involving the sexual abuse of children in

exchange for money and has made payments to watch such content live online.

**Information related to the user of the SUBJECT ACCOUNT**

21.    In response to an Administrative Summons served to Microsoft for Microsoft and

Skype account information associated with email address newenglandpuppy2@yahoo.com, the

following information was provided:

| Microsoft | Sign in name: newenglandpuppy2@yahoo.com<br>First Name: david<br>Last Name: mendum<br>Create Date and Time: 01/11/2018 @ 11:32:30 PM (UTC)<br>Alias Name(s): 16033122107; live:newenglandpuppy2 |
|-----------|--------------------------------------------------|
| Skype | Name: david mendum<br>Country: US<br>Province: new hampshire<br>City: epping<br>Emails: newenglandpuppy2@yahoo.com<br>Username: live:newenglandpuppy2<br>Account Create Date and Time: 2018/01/11 @ 23:32:38 (UTC)<br>Account Creation IP: 76.118.157.205<br>Current Email Address: newenglandpuppy2@yahoo.com |

22.    A query of New Hampshire Division of Motor Vehicles records on September 9,

2024 revealed that there is an active driver's license issued to David MENDUM (date of birth

REDACTED) with an address of REDACTED, Epping, NH.  MENDUM is also listed as the

second owner of a vehicle registered to his mother, Sharon Mendum, at that same address.

**Money Service Business Subpoena Information**

23.    As previously stated in this affidavit, individuals who engage in the sexual

exploitation of children through an internet-based, videoconferencing and chat application often

use a variety of Money Service Businesses (MSBs) to pay the traffickers or associates of the

traffickers for access to this material.  Based on the communications between the SUBJECT

ACCOUNT and TRAFFICKER ACCOUNT 1 and TRAFFICKER ACCOUNT 2, subpoenas

were served to Western Union and other MSBs including PayPal, WorldRemit, MoneyGram,

Xoom, and/or Remitly for information relating to accounts and transactions associated with

email address newenglandpuppy2@yahoo.com.  In response to those subpoenas, more than 360 money transfers totaling more than $30,000 were identified and all transfers were sent to recipients in the Philippines.  They are summarized as follows:

| MSB | # of transfers | Date Range | Total Sent |
|---|---|---|---|
| Moneygram | 1 | 03/19/20 | $65.00 |
| Paypal | 141 | 06/06/22 - 02/28/23 | $10,126.90 |
| Remitly | 51 | 08/06/21 - 06/05/23 | $6,901.71 |
| Western Union | 168 | 01/08/18 - 09/05/21 | $13,077.00 |
| XOOM | 7 | 12/13/20 - 03/10/23 | $780.00 |

24.     Included in the above transactions were 4 Western Union money transfers made in April and May 2020 totaling $215 to a recipient name of "Gilbert Bordado" which is the name that the user of TRAFFICKER ACCOUNT 1 provided the user of the SUBECT ACCOUNT.

25.     The sender and/or account holder for all of these transactions was David MENDUM.  MENDUM provided Paypal, Moneygram, and Western Union with a date of birth of REDACTED, phone number of REDACTED and address of REDACTED, Epping, NH. MENDUM provided the same information to XOOM; however, the street address he provided to XOOM was slightly different in that he provided a street address of REDACTED.

## INFORMATION REGARDING SKYPE

26.     Skype is a Voice over Internet Protocol (VoIP) service offered by Microsoft that allows users to conduct video chats and voice calls over the internet.  Skype users can also create and maintain contact lists of other Skype users; engage in text chats through instant messaging; exchange and upload media files, including videos and images; send video messages; and create conference calls.  A Skype user's video and chat messages, contact lists, call and text records, and the media files associated with a Skype user's account (whether sent, received, or uploaded),

if available, are retained on servers in the care, custody, or control of Microsoft.  These records, including chat messages and media files, can be retained by Microsoft for many years.  For example, and as previously stated in this affidavit, federal search warrant 3:24-mc-175 was issued in the United States District Court in the District of Oregon on February 15, 2024 and the records provided by Microsoft in response to this warrant included Skype communications associated with TRAFFICKER ACCOUNT 2 were from as far back as December 13, 2018.

27.    Users can sign up for an account and access Skype services directly through the Skype website; alternatively, users can download the Skype application, which allows them to access Skype services from computers, tablets, cellular phones, certain televisions, and other electronic devices. Skype assigns a subscriber a unique name or ID, and a subscriber can then add a display name to their account. The user can change the display name at any time. The unique name or ID, by contrast, cannot be changed by the user.

28.    Skype offers the basic communication services, as described above, to the general public, free of charge.  With the free service, users can communicate with other users who also operate the Skype application.  For a fee, users can expand the use of the service by using it to communicate with non-Skype users.  Specifically, the paid service allows users to communicate through voice calls and text messages to cellular telephone users.

29.    In my training and experience, I know that VoIP services like Skype generally ask their users to provide certain personal identifying information when registering for an account. Such information can include the user's full name, physical address, telephone numbers, email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's

user or users.  Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, and/or illicit activities.

30.     In my training and experience, I know that VoIP services like Skype typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, VoIP services like Skype often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

31.     In my training and experience, I know that in some cases, users of VoIP services like Skype will communicate directly with the VoIP service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. VoIP providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

32.     As explained herein, information stored on servers in the care, custody, or control of Microsoft in connection with a particular Skype account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, Skype chat communications, contacts lists, and media files sent and/or received (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by Skype may show how and when the account was accessed or used.  For example, as described above, VoIP providers typically log the Internet Protocol (IP) addresses from which users access the VoIP account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the VoIP account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored in the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via Skype).  Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the Skype user's account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or

consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

34.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Microsoft.  Because the warrant will be served on Microsoft, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## CONCLUSION

35.    Based on the foregoing, I respectfully submit that there is probable cause to believe that violations, or attempted violations, of 18 U.S.C. § 2251(a), (c), and (e) - Sexual exploitation of children, and attempts and conspiracies to sexually exploit children; 18 U.S.C. § 2252A(a)(1) & (b)(1) - Transportation and attempted transportation of child pornography; 18 U.S.C. § 2252A(a)(2) & (b)(1) - Distribution and attempted distribution of child pornography; 18 U.S.C. §2252A(a)(2) & (b)(1) - Receipt and attempted receipt of child pornography; 18 U.S.C. §2252A(a)(5)(B) & (b)(2) - Possession of and access with intent to view child pornography; and 18 U.S.C. § 2422(b) - Coercion and enticement and attempted coercion and enticement of a

16

minor have been committed and that the SUBJECT ACCOUNT listed in Attachment A contains evidence, instrumentalities, and fruits of these crimes.

36.    I therefore respectfully request that the Court issue the proposed search warrant for the SUBJECT ACCOUNT described in Attachment A to require Microsoft to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Government-authorized persons will then review that information to locate the items described in Section II of Attachment B.

Respectfully submitted,

/s/ Derek Dunn
Derek Dunn
Special Agent
Homeland Security Investigations

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

/s/ Andrea K. Johnstone
Andrea K. Johnstone
United States Magistrate Judge
Date:   Sep 30, 2024

17

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Skype account assigned username live:newenglandpuppy2 that is stored at premises controlled by Microsoft, a company that accepts service of legal process at Redmond, Washington.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Microsoft**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to requests made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for the Skype username listed in Attachment A:

a.      The contents of all messages associated with the account, including stored or preserved copies of messages sent to and from the account, draft messages, the source and destination addresses associated with each message, the date and time at which each message was sent, and the size and length of each message;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, IP addresses associated with uploads from the account, account status, email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All content in the user's Skype account, whether in system or user created folders, along with any settings on who has access to the files or folders and dates, times, and IP address of when the files were uploaded;

d.      The types of service utilized;

19

e.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

g.     All media files, including photos and videos, associated with (whether sent, received, or uploaded) the Skype username identified in Attachment A, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

h.     Records/metadata indicating when the camera of the device was turned on/off during a video call, including the make and model of the device if possible; and

i.     All logs showing the devices used to log into or connect to the account.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence or instrumentalities of violations of 18 U.S.C. § 2251(a) or (c) and (e) (production and attempted production of child pornography; 18 U.S.C. § 2252A(a)(1) and (b)(1) (transportation and attempted transportation of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(2) and (b)(1) (receipt or distribution and attempted receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(5)(b) and (b)(2) (possession of or access with intent to view and attempted possession of or access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2422(b) (coercion and enticement and attempted coercion and enticement of a minor); involving the Skype username listed in Attachment A, including the following:

a.      All files, documents, communications, images, videos, contacts, metadata, and logs associated with Skype ID in Attachment A related to visual depictions of minors engaging in sexually explicit conduct or child pornography, along with any evidence that would tend to show the true identities of the persons committing these offenses or the identities of the persons depicted in the images, videos, or other files.

b.      All activity logs and IP logs, including all records of the IP addresses that logged into the accounts or uploaded files into the accounts.

c.      All account information, including:

i)      full name; email address; telephone number; length of service; status of account (whether the account is active or disabled); settings on account to include if the account or its folders are open to the public to view and/or upload files to; type of account; payment information; IP addresses for account login and uploads; last seen IP addresses of computers linked to the account; mobile device information;

ii)      All logs of devices and accompanying serial or model numbers and other identifying numbers to include dates of activation, registration, deactivation, or use; and

iii)      All records pertaining to communications between Skype and any person regarding the user or the user's account, including contacts with support services and records of actions taken.